IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DENSYS LTD.,<br><br>　　　　　　　　　　　　Plaintiff,<br><br>　　v.<br><br>ALIGN TECHNOLOGY INC.,<br><br>　　　　　　　　　　　　Defendants. | Case No. _____<br><br>Jury Trial Demanded |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Densys Ltd. ("Densys") files this Complaint against Align Technology Inc. ("Align") for patent infringement of United States Patent Nos. 6,402,707 and 8,665,257 (the "patents-in-suit") (Exhibits 1-2) and alleges as follows:

**NATURE OF THE ACTION**

1. This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*

**THE PARTIES**

2. Plaintiff Densys is an Israeli company with its principal place of business located at Ha-Marpe 3, AVX building, Har Hotzvim, Jerusalem 97774, Israel.

3. On information and belief, Defendant Align is a Delaware corporation incorporated on April 3, 1997.

4. On information and belief, Align has developed, made, used, sold, offered for sale, or imported into the United States the accused scan bodies, the accused intraoral scanners, and the hardware and software associated with the accused scanners.

1

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*

6. Because Defendant Align resides in Delaware, this Court has personal jurisdiction over Align. Further, venue is proper pursuant to 28 U.S.C. §§ 1391(b)(1) and 1400.

## PATENTS-IN-SUIT

7. U.S. Patent No. 6,402,707 (the " '707 Patent") was issued by the United States Patent and Trademark Office ("USPTO") on July 11, 2002. Densys is the owner by assignment of the entire right, title, and interest in and to the '707 Patent, entitled "Method and system for real time intra-orally acquiring and registering three-dimensional measurements and images of intra-oral objects and features," a true and correct copy of which is attached hereto as Exhibit 1. Dr. Maurice Ernst is the sole inventor of this patent.

8. Evidence of the assignment of the '707 Patent to Densys is recorded with the USPTO at Reel/Frame 040762/0059. Densys is the sole owner of the '707 Patent and of all rights of recovery thereunder for past and future infringement. Align does not have a license to the '707 Patent.

9. The '707 Patent is the subject of the suit *Densys v. 3Shape*, 6:19-cv-680 (W.D. Tex.), in which the jury found that 3Shape willfully infringed the '707 Patent. That case is still pending, and the parties are awaiting the presiding Judge's (the Honorable Alan D. Albright) rulings on post-trial motions, including for enhancement of damages for willful infringement.

10. U.S. Patent No. 8,665,257 (the " '257 Patent") was issued by the United States Patent and Trademark Office ("USPTO") on March 4, 2014. Densys is the owner by assignment

of the entire right, title, and interest in and to the '257 Patent, entitled "Three-dimensional modeling of the oral cavity," a true and correct copy of which is attached hereto as Exhibit 2. Maurice Ernst, Micha Geffen, Uri Neta, and Carmi Cohen are inventors of this patent.

11. Densys owns all rights, title, and interest in the '257 Patent. Align does not have a license to the '257 Patent.

12. The '707 Patent and the '257 Patent are collectively referred to as the "patents-in-suit" or "Asserted Patents."

13. To the extent necessary, Densys has complied with all requirements of 35 U.S.C. § 287 at all relevant times for each of the Asserted Patents. Densys has no U.S. sales and has not licensed the Asserted Patents.

## BACKGROUND

14. Founded in 2000 by Dr. Moshe Ernst, Densys is a pioneer in the development of intra-oral dental systems for use in the dental market. Dr. Ernst, the principal inventor, has been involved in the digital dentistry revolution since its infancy. A dentist by profession, Dr. Ernst noticed that traditional dentistry techniques for making impressions of teeth and gums of a patient's mouth involved the time-intensive and unpleasant application of putties to the patient's mouth. Legacy crown and bridge, orthodontic production, and other dental procedures & processes rely on these time consuming, inaccurate, messy, and cumbersome impression materials.

15. The benefits of a digital impression system capable of creating accurate instantaneous digital images of the full mouth while avoiding the mess of the putties have been attractive to multiple companies in the dental technology space. But the promise of such a digital system proved hard to realize. Early attempts failed to create multi-view, digital, three-dimensional impression models of even a single tooth because the patient, the dentist, and the freely held intra

3

oral scanner all moved around causing difficulty in stitching of multiple three-dimensional images into useful models. Additionally, the prior art digital imaging process had to proceed in a slow and stepwise fashion.

16. Densys's and Dr. Ernst's innovative scanning solution utilizes advanced dental imaging technology that allows dentists to digitally scan and create real-time, highly accurate, full-mouth, 3D maps of teeth and of fixed soft tissues. This low-cost technology enables the creation of a real-time, full-mouth intraoral scan, and the digitization of dental information. It also enables subsequent digital dentistry, which includes almost every dental treatment, use of more accurate and improved dental techniques, with associated new materials and software, new laboratory manufacturing methods machinery, and materials, all of which could not be used before dentistry was digitized. The result is a better product and many new treatment techniques, which today are widely adopted and are industry-standard.

17. The digital intra oral impression created by Dr. Ernst and Densys is the entry point to all digital dentistry. Today, all dental treatments (other than the oldest immature primitive treatments) and their associated software machinery and materials are digital. This foundational dental industry technology would not have been possible without Dr. Ernst and Densys.

18. The patents-in-suit are the result of Densys' research, design, and development of innovative and proprietary three-dimensional, intra-oral imaging technologies, which were led by Dr. Ernst, Densys' founder and an inventor of the patents-in-suit.

19. At least as early as 2002, in an attempt to partner and to scale its business, Densys courted interest from numerous larger multinational dental supplier companies to adopt and to commercialize its technology. Densys entered into NDAs and has held discussions with many leading technology companies in the space, including Align at least as early as the 2000s.

20. Following discussions between Densys and Align, Align's Vice President of R&D sent a letter to Dr. Ernst stating:

> I am writing this letter to confirm Align Technology, Inc. commitment in forging a relationship for co-development of an intra-oral scanning device for 3D reconstruction of dental arches. We are currently in the process of reviewing several proposals, including Densys Ltd., and identifying the suitable partners for developing such device.

21. Despite early enthusiasm, the large players, including Align, ended up deliberately infringing Densys's patents rather than collaborating with the company.

## DEFENDANT'S ACCUSED PRODUCTS

22. On information and belief, defendant Align designs, develops, manufactures, and markets the accused three-dimensional intraoral scanners, including but not limited to the "iTero" branded scanners (hereinafter collectively "iTero Scanners"). Defendant's infringing products include all Align scanners that were sold, offered for sale, made, used, or imported into the United States from 2019 to the present. The Accused Products include but are not limited to iTero Element 5D, iTero Element 5D Plus, iTero Element 5D Plus Lite, iTero Element 2, iTero Element Flex, iTero Element, iTero HD 2.9, iTero HDU, iTero Lumina Pro, and iTero Lumina (the "iTero Scanners"). The iTero Scanners work in conjunction with software from Align and hardware components to form a complete intraoral scanning system (collectively the "Accused Products").

23. On information and belief, the Accused Products also generate substantial revenue for Align by way of convoyed sales of, for example, orthodontic aligner treatments.

## WILLFUL INFRINGEMENT

24. Upon information and belief, Defendant, as a significant player in the dental imaging market, is aware of the willful infringement verdict against its competitor in *Densys v. 3Shape*, 6:19-cv-680 (W.D. Tex.). There the jury found that 3Shape willfully infringed the '707 Patent. Defendant, thus, has knowledge that its Accused Products, which are similar in all material

5

respects to 3Shape's products, also infringe the '707 Patent.

25.     Additionally, upon information and belief, given the foundational nature of the '707 Patent and importance of the '707 Patent to intraoral scanners, Defendant, by virtue of its market participation and knowledge concerning the foundational patents in the industry, has knowledge of the '707 Patent and its infringement of the '707 Patent. For example, in 2000 and 2001, Avi Kopelman of Cadent Holdings Inc. (hereinafter "Cadent") had discussions with Dr. Ernst about cooperation and merging Cadent and Densys. In 2011, Align acquired Cadent. *See* https://www.sec.gov/Archives/edgar/data/1097149/000117184311001219/newsrelease.htm. During the parties' discussions, on February 14, 2002, Align's Vice President of R&D sent a letter to Dr. Ernst stating:

> I am writing this letter to confirm Align Technology, Inc. commitment in forging a relationship for co-development of an intra-oral scanning device for 3D reconstruction of dental arches. We are currently in the process of reviewing several proposals, including Densys Ltd., and identifying the suitable partners for developing such device.

26.     Align's own patents also show that it has been well-aware of the '707 Patent. Over 100 patent applications and patents by Align or by Avi Kopelman of Align cite the '707 Patent. For example, U.S. Patent No. 7,245,977 (filed on July 20, 2000) listed the '707 Patent as reference. And U.S. Patent No. 10,543,066 (filed on Nov. 13, 2017) states that "Alternatively, scanning of the dental cavity to provide the 3D data may be accomplished using a suitable apparatus, for example as disclosed in any one of U.S. Pat. Nos. 4,837,732, 4,611,288, 6,594,539, ***6,402,707*** . . ." U.S. 10,543,066 at 5:59-66 (emphasis added). U.S. Patent No. 11,197,739 (filed on July 17, 2019) contains the same language. *See* U.S. 11,197,739 at 9:4-12.

27.     Moreover, the filing of this lawsuit provides Defendant with further notice of each of the patents-in-suit such that any continued infringement by Defendant after the filing date of this lawsuit constitutes willful infringement.

28. Defendant willfully infringed and continues to infringe the patents-in-suit, having actual knowledge of the patents.

## COUNT I: INFRINGEMENT OF THE '707 PATENT

29. Densys repeats and incorporates by reference each preceding paragraph as if fully set forth herein and further states:

30. Defendant has infringed and continue to infringe the '707 Patent directly and/or indirectly (by inducing infringement by others) by, *inter alia,* making, using, selling, importing and/or offering for sale the Accused Products in the United States.

31. In the alternative to literal infringement, Defendant has infringed and continues to infringe the '707 Patent under the doctrine of equivalents.

32. Defendant's Accused Products, including but not limited to the iTero Element series scanners (such as but not limited to iTero Element 5D, iTero Element 5D Plus, iTero Element 5D Plus Lite, iTero Element 2, iTero Element Flex, and iTero Element), practice every element of at least Claims 1 and 37. Attached as Exhibit 3 is a preliminary claim chart showing, based on public information, that the Accused Products infringe at least Claims 1 and 37 of the '707 Patent.

33. Align has directly infringed the '707 Patent, including by making, using, selling, offering for sale, and importing into the United States, the Accused Products. Further, Align uses the Accused Products, for example, by testing and/or demonstrating the Accused Products.

34. Align's infringement of at least Claims 1 and 37 of the '707 Patent is ongoing.

35. Align also actively induces and has induced infringement of the '707 Patent under 35 U.S.C. § 271(b), either literally or under the doctrine of equivalents.

36. On information and belief, Align encouraged and facilitated infringement with

specific intent by, for example, training its customers to use the Accused Product(s) in a manner that infringes at least one claim of the '707 Patent, promoting to Align's customers the use of the Accused Product(s) in a manner that infringes at least one claim of the '707 Patent, and disseminating promotional and marketing material and product literature to those customers which encourages the use of the Accused Product(s) in a manner that infringes at least one claim of the '707 Patent. For example, Align is aware that the features claimed in the '707 Patent are features in the Accused Product(s) and are features used by others that purchase the Accused Product(s) and, therefore, that purchasers and/or end users of the Accused Product(s) will infringe the '707 Patent.

37. Align actively induces infringement of the '707 Patent with knowledge and the specific intent to encourage that infringement by, for example, disseminating the Accused Product(s) and providing promotional materials, marketing materials, training materials, instructions, product manuals, user guides, and technical information (including but not limited to the materials and videos identified in this Complaint and its Exhibits) to third parties including but not limited to resellers, distributors, customers, potential customers, dentists, orthodontists, and/or other end users of the Accused Product(s). Those third parties directly infringe the '707 Patent at least by selling, offering to sell, and/or using the Accused Product(s).

38. Align has been and is now contributing to the infringement of the '707 Patent under 35 U.S.C. § 271(c), either literally or under the doctrine of equivalents.

39. Align has actively, knowingly, and intentionally contributed to and continues to actively, knowingly, and intentionally contribute to the infringement of the '707 Patent by selling or offering to sell, and continuing to sell or offering for sale the Accused Product(s) within the United States and/or by importing the Accused Product(s) into the United States with knowledge that the infringing technology in the Accused Product(s) is especially made and/or especially adapted for use

that infringes the '707 Patent, is a material part of the patented invention, and is not a staple article or commodity of commerce suitable for substantial non-infringing use and with knowledge that others including, but not limited to, resellers, distributors, customers, dentists, orthodontists, dental and orthodontic labs, and/or other end users of the Accused Product(s) do not have any substantial noninfringing uses for the Accused Product(s). Align has such knowledge at least because the claimed features of the '707 Patent are used by others including, but not limited to, resellers, distributors, customers, dentists, orthodontists, dental and orthodontic labs, and/or other end users of the Accused Product(s).

40. On information and belief, Align knew or should have known of the '707 Patent and has acted, and continues to act, in an egregious and wanton manner by infringing the '707 Patent. On information and belief, Align's infringement of the '707 Patent has been and continues to be willful and deliberate. Align knows and has familiarity with Densys, which is a known pioneer in intraoral scanners. On information and belief, Align knowingly developed, has sold, sells, and offers to sell the Accused Product(s) in an infringing manner that was known to Align or was so obvious that it should have been known to Align.

41. On information and belief, despite knowing its actions constituted infringement of the '707 Patent and/or despite knowing that there was a high likelihood that its actions constituted infringement of the '707 Patent, Align nevertheless continued its infringing actions, and continues to make, use, and sell the Accused Product(s).

42. Align's acts of infringement have injured and damaged Densys and will continue to injure and damage Densys.

43. Align's actions have caused Densys to suffer irreparable harm resulting from the loss of its lawful patent rights and the loss of its ability to exclude others from making, using,

selling, offering to sell, and importing the inventions of the '707 Patent. On information and belief, Align will continue these infringing acts unless enjoined by this Court.

## COUNT II: INFRINGEMENT OF THE '257 PATENT

44. Densys repeats and incorporates by reference each preceding paragraph as if fully set forth herein and further states:

45. Defendant has infringed and continues to infringe the '257 Patent directly and/or indirectly (by inducing infringement by others) by, *inter alia,* making, using, selling, importing and/or offering for sale the Accused Products in the United States.

46. In the alternative to literal infringement, Defendant has infringed and continues to infringe the '257 Patent under the doctrine of equivalents.

47. Defendant's Accused Products, including but not limited to the iTero Lumina series scanners (such as but not limited to iTero Lumina Pro and iTero Lumina), practice every element of at least Claim 1. Attached as Exhibit 4 is a preliminary claim chart showing, based on public information, that the Accused Products infringe at least Claim 1 of the '257 Patent.

48. Align has directly infringed the '257 Patent, including by making, using, selling, offering for sale in, and importing into the United States, the Accused Products. Further, Align uses the Accused Products, for example, by testing and/or demonstrating the Accused Products.

49. Align's infringement of at least Claim 1 of the '257 Patent is ongoing.

50. Align also actively induces and has induced infringement of the '257 Patent under 35 U.S.C. § 271(b), either literally or under the doctrine of equivalents.

51. On information and belief, Align encouraged and facilitated infringement with specific intent by, for example, training its customers to use the Accused Product(s) in a manner that infringes at least one claim of the '257 Patent, promoting to Align's customers the use of the

Accused Product(s) in a manner that infringes at least one claim of the '257 Patent, and disseminating promotional and marketing material and product literature to those customers which encourages the use of the Accused Product(s) in a manner that infringes at least one claim of the '257 Patent. For example, Align is aware that the features claimed in the '257 Patent are features in the Accused Product(s) and are features used by others that purchase the Accused Product(s) and, therefore, that purchasers and/or end users of the Accused Product(s) will infringe the '257 Patent.

52. Align actively induces infringement of the '257 Patent with knowledge and the specific intent to encourage that infringement by, for example, disseminating the Accused Product(s) and providing promotional materials, marketing materials, training materials, instructions, product manuals, user guides and technical information (including but not limited to the materials and videos identified in this Complaint and its Exhibits) to third parties including but not limited to resellers, distributors, customers, potential customers, dentists, orthodontists, and/or other end users of the Accused Product(s). Those third parties directly infringe the '257 Patent at least by selling, offering to sell, and/or using the Accused Product(s).

53. Align has been and is now contributing to the infringement of the '257 Patent under 35 U.S.C. § 271(c), either literally or under the doctrine of equivalents.

54. Align has actively, knowingly, and intentionally contributed to and continues to actively, knowingly, and intentionally contribute to the infringement of the '257 Patent by selling or offering to sell, and continuing to sell or offering for sale the Accused Product(s) within the United States and/or by importing the Accused Product(s) into the United States with knowledge that the infringing technology in the Accused Product(s) is especially made and/or especially adapted for use that infringes the '257 Patent, is a material part of the patented invention, and is not a staple article or commodity of commerce suitable for substantial non-infringing use and with knowledge that others

including, but not limited to, resellers, distributors, customers, dentists, orthodontists, dental and orthodontic labs, and/or other end users of the Accused Product(s) do not have any substantial noninfringing uses for the Accused Product(s). Align has such knowledge at least because the claimed features of the '257 Patent are used by others including, but not limited to resellers, distributors, customers, dentists, orthodontists, dental and orthodontic labs, and/or other end users of the Accused Product(s).

55. On information and belief, Align knew or should have known of the '257 Patent and has acted, and continues to act, in an egregious and wanton manner by infringing the '257 Patent. On information and belief, Align's infringement of the '257 Patent has been and continues to be willful and deliberate. Align knows and has familiarity with Densys, which is a known pioneer in intraoral scanners. On information and belief, Align knowingly developed, has sold, sells and offers to sell the Accused Product(s) in an infringing manner that was known to Align or was so obvious that it should have been known to Align.

56. On information and belief, despite knowing its actions constituted infringement of the '257 Patent and/or despite knowing that there was a high likelihood that its actions constituted infringement of the '257 Patent, Align nevertheless continued its infringing actions, and continues to make, use, and sell the Accused Product(s).

57. Align's acts of infringement have injured and damaged Densys and will continue to injure and damage Densys.

58. Align's actions have caused Densys to suffer irreparable harm resulting from the loss of its lawful patent rights and the loss of its ability to exclude others from making, using, selling, offering to sell, and importing the inventions of the '257 Patent. On information and belief, Align will continue these infringing acts unless enjoined by this Court.

## JURY DEMAND

59. Pursuant to Federal Rule of Civil Procedure 38(b), Densys hereby requests a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

60. Densys respectfully requests this Court to enter judgment in Densys's favor and against Align as follows:

    a. Holding that Defendant has directly infringed, either literally and/or under the doctrine of equivalents, and continues to directly infringe United States Patent Nos. 6,402,707; and 8,665,257;

    b. Holding that Defendant has induced infringement and continues to induce infringement of United States Patent Nos. 6,402,707; and 8,665,257;

    c. Holding that Defendant has contributorily infringed and continues to contributorily infringe United States Patent Nos. 6,402,707; and 8,665,257;

    d. Awarding lost profits and/or reasonable royalty damages, including treble damages for willful infringement, to Densys in an amount no less than a reasonable royalty for Defendant's infringement of the United States Patent Nos. 6,402,707; and 8,665,257, together with prejudgment and post-judgment interest and costs as permitted under 35 U.S.C. § 284;

    e. Awarding pre-issuance damages pursuant to 35 U.S.C. § 154(d);

    f. Awarding attorney's fees pursuant to 35 U.S.C. § 285 or as otherwise permitted by law;

    g. Ordering Defendant to pay supplemental damages to Densys, including any ongoing royalties and interest, with an accounting, as needed;

      h.      Enjoining Defendant from practicing the United States Patent Nos. 6,402,707; and 8,665,257; and

      i.      Awarding such other costs and further relief that the Court determines to be just and equitable, including an accounting of all post-verdict revenues or profits related to the infringing activity.

Dated: June 20, 2025

Of Counsel:

Justin A. Nelson
Samuel Drezdzon
SUSMAN GODFREY L.L.P.
1000 Louisiana
Suite 5100
Houston, TX 77002
Tel: (713) 651-9366
Fax: (713) 654-6666
jnelson@susmangodfrey.com
sdrezdzon@susmangodfrey.com

Oleg Elkhunovich
Anna (Xue) Li
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars
Suite 1400
Los Angeles, CA 90064
Tel: (310) 789-3190
Fax: (310) 789-3150
oelkhunovich@susmangodfrey.com
ali@susmangodfrey.com

Dinis Cheian
SUSMAN GODFREY L.L.P.
One Manhattan West,
New York, NY 10001
Tel: (212) 336-8330
Fax: (212) 336-8340
dcheian@susmangodfrey.com

Respectfully submitted,

FARNAN LLP

/s/ Brian E. Farnan
Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 N. Market St., 12th Floor
Wilmington, DE 19801
Tel: (302) 777-0300
Fax: (302) 777-0301
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com