# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DENSYS LTD., <br><br> Plaintiff, <br><br> v. <br><br> ALIGN TECHNOLOGY INC., <br><br> Defendant. | Civil Action No. 25-768-GBW |
| DENSYS LTD., <br><br> Plaintiff, <br><br> v. <br><br> MEDIT CORP., <br><br> Defendant. | Civil Action No. 25-769-GBW |

Brian E. Farnan, Michael J. Farnan, FARNAN LLP, Wilmington, DE; Justin A. Nelson, Samuel Drezdzon, SUSMAN GODFREY L.L.P., Houston, TX; Oleg Elkhunovich, Anna (Xue) Li, SUSMAN GODFREY L.L.P., Los Angeles, CA; Dinis Cheian, SUSMAN GODFREY L.L.P., New York, NY.

*Counsel for Plaintiff Densys Ltd*

Karen E. Keller, Virginia K. Lynch, SHAW KELLER LLP, Wilmington, DE; Michael C. Wilson, Chase A. Cobern, Daniel Withers, Lucas R. Dombroski, MUNCK WILSON MANDALA, LLP, Dallas, TX; Merritt D. Westcott, MUNCK WILSON MANDALA, LLP, Houston, TX.

*Counsel for Defendant Align Technology Inc.*

John V. Gorman, Amy M. Dudash, MORGAN, LEWIS & BOCKIUS LLP, Wilmington, DE; Natalie A. Bennett, MORGAN, LEWIS & BOCKIUS LLP, Washington DC, Tae-Woong Koo, MORGAN, LEWIS & BOCKIUS LLP, Palo Alto, CA, Jason C. White, MORGAN, LEWIS & BOCKIUS LLP, Chicago, IL.

*Counsel for Defendant Medit Corp.*

## MEMORANDUM OPINION

May 29, 2026
Wilmington, Delaware

_____

GREGORY B. WILLIAMS
UNITED STATES DISTRICT JUDGE

Pending before the Court are Defendant Align Technology Inc.'s ("Align") Motion to Dismiss Plaintiff's Complaint (C.A. No. 25-768, D.I. 10) ("Align's Motion") and Defendant Medit Corp.'s ("Medit") Motion to Dismiss Plaintiff's First Amended Complaint (C.A. No. 25-769, D.I. 21) ("Medit's Motion), pursuant to Federal Rule of Civil Procedure 12(b)(6). Both motions have been fully briefed (C.A. No. 25-768, D.I. 11, D.I. 17, D.I. 20; C.A. No. 25-769, D.I. 22, D.I. 26, D.I. 31), and oral argument was held on May 27, 2026.[1] For the reasons set forth below, the Court denies-in-part and grants-in part Align's Motion and grants Medit's Motion.

## I.     BACKGROUND

The following are factual allegations from Plaintiff's Complaint in C.A. No. 25-768 (D.I. 1) and Plaintiff's First Amended Complaint in C.A. No. 25-769 (D.I. 18) that are taken as true for the purpose of resolving Align and Medit's Motions.

Plaintiff in both actions is Densys Ltd. ("Densys"), a "pioneer in the development of intra-oral dental systems for use in the dental market." C.A. No. 25-768, D.I. 1 ¶ 14. Densys was founded by Dr. Moshe Ernst in 2000, who is a dentist by profession and the principal inventor of the invention in the patents at issue. *Id.* Densys and Dr. Ernst invented a scanning solution that "allows dentists to digitally scan and create real-time, highly accurate, full-mouth, 3D maps of teeth and of fixed soft tissues." *Id.* ¶ 16. Densys owns two patents related to this invention, U.S. Patent Nos. 6,402,707 (the "'707 Patent") and 8,665,257 (the "'257 Patent") (together, the "Asserted Patents"). *Id.* ¶¶ 8, 11. The '707 Patent, entitled "Method and system for real time

_____

[1] Pursuant to Federal Rule of Civil Procedure 42(a)(1), the Court heard oral argument for the pending motions in the each action together because they presented substantially similar questions of law and fact.

intra-orally acquiring and registering three-dimensional measurements and images of intra-oral objects and features," was issued by the United States Patent and Trademark Office ("USPTO") on July 11, 2002. *Id.* ¶¶ 7, 8. Dr. Maurice Ernst is the sole inventor listed on the '707 Patent. *Id.* ¶ 9. The '257 Patent, entitled "Three-dimensional modeling of the oral cavity," was issued by the USPTO on March 4, 2014. *Id.* ¶ 10.

As early as 2002, "Densys courted interest from numerous larger multinational dental supplier companies to adopt and [] commercialize its technology," and "entered into NDAs and [] held discussions with many leading technology companies in the space, including Align." *Id.* ¶ 19. On February 14, 2002, Align wrote a letter to Densys explaining that it was considering suitable partners, including Densys, to co-develop an "intra-oral scanning device for 3D reconstruction of dental arches." *Id.* ¶ 25.

Align then developed and marketed its own three-dimensional intra-oral scanners, including but not limited to iTero Element 5D, iTero Element 5D Plus, iTero Element 5D Plus Lite, iTero Element 2, iTero Element Flex, iTero Element, iTero HD 2.9, iTero HDU, iTero Lumina Pro, and iTero Lumina (the "iTero Scanners"). *Id.* ¶ 22. The iTero Scanners "work in conjunction with software from Align and hardware components to form a complete intraoral scanning system." *Id.* Separately, Medit developed its own intra-oral scanners, including the i900, i900 Mobility, i900 Classic, i700, i700 Wireless, i600, T-Series, and i500 intraoral scanners ("Medit Scanners"). C.A. No. 25-769, D.I. 18 ¶ 21. Medit also developed software called Medit Scan and Medit Link that "embody systems and/or methods for intra-oral scanning and generating virtual models for dental applications." *Id.* Densys brought separate actions against Align and Medit accusing both companies of infringement of the '707 and '257 Patents. *See generally* C.A. No. 25-768, D.I. 1; C.A. No. 25-769, D.I. 18.

On August 29, 2025, Align moved to dismiss Densys's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), contending that the asserted claims of the Asserted Patents are directed to patent-ineligible subject matter under 35 U.S.C. § 101, and that the Complaint fails to state a claim for willful or induced infringement of the Asserted Patents. C.A. No. 25-768, D.I. 10. On February 2, 2026, Medit likewise moved to dismiss Densys's First Amended Complaint pursuant to Rule 12(b)(6), asserting that the Amended Complaint fails to sufficiently allege claims for contributory, indirect, and willful infringement. C.A. No. 25-769, D.I. 21.

## A.    The '707 Patent

The '707 Patent is generally directed to "[a] method and system for real time intra-orally acquiring and registering three-dimensional measurements and images of intra oral objects and features." '707 Patent at Abstract. The '707 Patent has sixty-eight (68) claims. *Id.* at Claims. The Complaint alleges that Align infringes the '707 Patent "directly and/or indirectly" and, in the alternative, "under the doctrine of equivalents." C.A. No. 25-768, D.I. 1 ¶¶ 30-31. The Complaint includes a "preliminary claim chart showing, based on public information, that the Accused Products infringe at least Claims 1 and 37 of the '707 Patent." *Id.* ¶ 32. Claims 1 and 37 are independent claims that recite substantially similar steps, but Claim 37 is directed to a system. Claim 1 recites:

> 1. A method for real time intra-orally acquiring and registering three-dimensional measurements and images of intra-oral objects and features, the intra-oral objects and features are located inside the oral cavity of a dental patient, comprising the steps of:
>
> (a) establishing an intra-oral fixed global registration position inside the oral cavity of the dental patient, said intra-oral fixed global registration position is definable in terms of global coordinate space of the oral cavity, said global coordinate space is associated with a fixed global reference coordinate system, said global coordinate space includes a plurality of intra-oral local coordinate spaces in the oral cavity;

5

(b) providing a measuring and imaging device for measuring and imaging the intra-oral objects and features located in the oral cavity;

(c) selecting a field of view of said measuring and imaging device located at a global position in said global coordinate space of the oral cavity;

(d) acquiring at least one three-dimensional measurement and image of the intra-oral objects and features located in said selected field of view of said measuring and imaging device, and, recording said global position of said measuring and imaging device relative to said intra-oral fixed global registration position, for forming at least one globally recorded three-dimensional measurement and image of the intra-oral objects and features located in the oral cavity;

(e) repeating step (c) and step (d) for a plurality of said global positions and a plurality of said fields of view of said measuring and imaging device, for forming a plurality of said globally recorded three-dimensional measurements and images of the intra-oral objects and features located in the oral cavity of the dental patient; and

(f) registering local coordinate space pixel positions in each of said plurality of globally recorded three-dimensional measurements and images with corresponding global coordinate space pixel positions, for forming a plurality of the three-dimensional measurements and images of the intra-oral objects and features located in the oral cavity of the dental patient which are registered relative to same said intra-oral fixed global registration position.

'707 Patent at Claim 1.

## B.    The '257 Patent

The '257 Patent is generally directed to "[a] method for creating three-dimensional models of intra-oral scenes features." '257 Patent at Abstract. The '257 Patent has five (5) claims. *Id.* at Claims. The Complaint alleges that Align infringes the '257 Patent "directly and/or indirectly" and, in the alternative, "under the doctrine of equivalents." C.A. No. 25-768, D.I. 1 ¶¶ 45-46. The Complaint includes a "preliminary claim chart showing, based on public information, that the

6

Accused Products infringe at least Claim 1 of the '257 Patent." *Id.* ¶ 48. Claim 1 is an independent claim and recites:

1. A system for three-dimensional modeling of the surface features of an intra-oral scene for a dental application, the system comprising:

   a pattern generator for generating a two-dimensional array of a plurality of random two-dimensional or one-dimensional patterns;

   a projectable medium that contains a memory for storing said array, said memory operative to allow projecting said array;

   a projector for projecting said array from said memory onto the intra-oral scene at a first angle;

   an acquiring unit with at least one camera for acquiring images of said array projected on the intra-oral scene from a second angle;

   a first position calculator for calculating the two-dimensional relative positions of said random patterns based on the relative positions thereof in an image;

   a pattern-matching software for matching said random two-dimensional patterns in said first image with said random two-dimensional patterns in said second image;
   a parallax calculator for calculating the parallax between said random patterns in said first image with said random patterns in said second image;

   a second position calculator for calculating a three-dimensional relative positions of said random patterns based on said two-dimensional relative positions and said parallax; and

   a modeling software for constructing a three-dimensional model of the intra-oral scene based on said three-dimensional relative positions.

'257 Patent at Claim 1.

## II.    LEGAL STANDARDS

### A.    Motion to Dismiss under Rule 12(b)(6)

"To state a viable claim, a plaintiff must offer a short and plain statement showing that he is entitled to relief, including 'allegations plausibly suggesting (not merely consistent with)' such entitlement." *Bah v. United States*, 91 F.4th 116, 119 (3d Cir. 2024) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). A complaint must include more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. The complaint must set forth enough facts that, if accepted as true, "state a claim to relief that is plausible on its face." *Id.* A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"[A]t the motion-to-dismiss stage, the Court assumes the truth of 'well-pleaded factual allegations' and 'reasonable inference[s]' therefrom." *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 181 (2024) (second alteration in original) (quoting *Iqbal*, 556 U.S. at 678-79). "In ruling on a motion to dismiss," a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Wood v. Moss*, 572 U.S. 744, 755 n.5 (2014) (quoting *Iqbal*, 556 U.S. at 678). Thus, "[t]he primary question in deciding a motion to dismiss is not whether the plaintiff will ultimately prevail, but rather whether they are entitled to offer evidence to establish the facts alleged in the complaint." *Fenico v. City of Philadelphia*, 70 F.4th 151, 161 (3d Cir. 2023). In other words, "when a complaint adequately states a claim, it may not be dismissed based on a district court's assessment that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder." *Twombly*, 550 U.S. at 563 n.8.

**B.      Patent Eligible Subject Matter**

Section 101 of the Patent Act defines patent-eligible subject matter.  It states, "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent thereof, subject to the conditions and requirements of this title."  35 U.S.C. § 101.  The Supreme Court has held that there are exceptions to § 101.  "Laws of nature, natural phenomena, and abstract ideas are not patentable." *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014) (internal quotation marks and citation omitted).  "[I]n applying the § 101 exception, [the court] must distinguish between patents that claim the 'building blocks' of human ingenuity and those that integrate the building blocks into something more, thereby 'transforming' them into a patent-eligible invention." *Id.* at 217 (cleaned up).  "The former 'would risk disproportionately tying up the use of the underlying' ideas, and are therefore ineligible for patent protection." *Id.* (internal citation omitted).  "The latter pose no comparable risk of pre-emption, and therefore remain eligible for the monopoly granted under our patent laws." *Id.*

The Supreme Court's *Alice* decision established a two-step framework for determining patent-eligibility under § 101.  In the first step, the court must determine whether the claims at issue are directed to a patent ineligible concept. *Alice*, 573 U.S. at 217.  In other words, the inquiry is whether the claims are directed to a law of nature, natural phenomenon, or abstract idea. *Id.* If "no," then the patent is not invalid for teaching ineligible subject matter under § 101.  If "yes," then the court proceeds to step two, where it considers "the elements of each claim both individually and as an ordered combination" to determine if there is an "inventive concept – i.e., an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself." *Id.* at 217-18 (alteration in original).  "A claim that recites an abstract idea must include 'additional features' to

9

ensure that the [claim] is more than a drafting effort designed to monopolize the [abstract idea]." *Id.* at 221 (internal quotation marks and citation omitted). To avoid invalidity, the additional features "cannot simply be well-understood, routine, conventional activities previously known to the industry. *Id.* Further, "the prohibition against patenting abstract ideas cannot be circumvented by attempting to limit the use of [the idea] to a particular technological environment." *Id.* at 222 (quoting *Bilski v. Kappos*, 561 U.S. 593, 610-11 (2010)). Thus, "the mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention." *Id.* at 223. "Contesting patent eligibility under § 101 is an affirmative defense of invalidity, and the burden of proving invalidity falls squarely on . . . the movant." *Aon Re, Inc. v. Zesty.AI, Inc.*, 791 F. Supp. 3d 531, 537 (D. Del. 2025) (citing *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 644 (2015)); *see also* 35 U.S.C. § 282(a)).

Patentability under 35 U.S.C. § 101 is a threshold legal issue. *Bilski*, 561 U.S. at 602. A Section 101 inquiry is properly raised at the pleading stage if it is apparent from the face of the patent that the asserted claims are not directed to eligible subject matter. *Cleveland Clinic Found. v. True Health Diagnostics LLC*, 859 F.3d 1352, 1360 (Fed. Cir. 2017); *see also SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1166 (Fed. Cir. 2018) (stating that patent eligibility "may be, and frequently has been, resolved on a Rule 12(b)(6) or (c) motion"); *FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089, 1097 (Fed. Cir. 2016) (stating that "it is possible and proper to determine patent eligibility under 35 U.S.C. § 101 on a Rule 12(b)(6) motion" (quoting *Genetic Techs. Ltd. v. Merial L.L.C.*, 818 F.3d 1369, 1373-74 (Fed. Cir. 2016))); *Voter Verified, Inc. v. Election Sys. & Software LLC*, 887 F.3d 1376, 1379 (Fed. Cir. 2018) (affirming Rule 12(b)(6) dismissal based on § 101 patent ineligibility). The Federal Circuit "ha[s] repeatedly recognized, 'it is possible and proper to determine patent eligibility under 35 U.S.C. § 101 on a Rule 12(b)(6) motion.'" *Mobile*

*Acuity Ltd. v. Blippar Ltd.*, 110 F.4th 1280, 1289-90 (Fed. Cir. 2024) (quoting *Genetic Techs.*, 818 F.3d at 1373). "If patent eligibility is challenged in a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), we must apply the well-settled Rule 12(b)(6) standard which is consistently applied in every area of law." *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 890 F.3d 1354, 1357 (Fed. Cir. 2018) ("*Aatrix I*"). "[P]atent eligibility [under § 101] can be determined at the Rule 12(b)(6) stage . . . only when there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law." *Beteiro, LLC v. DraftKings Inc.*, 104 F.4th 1350, 1355 (Fed. Cir. 2024) (some alterations in original) (quoting *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018) ("*Aatrix II*")).

## III.   DISCUSSION

### A.   The '707 Patent and '257 Patent are Directed to Patent-Eligible Subject Matter

#### 1.   The '707 Patent is Not Directed to an Abstract Idea

Align contends that Claims 1 and 37 of the '707 Patent are "directed to the abstract idea of calculating the position of an imaging device relative to a fixed location and using these calculations to perform 3D image registration using conventional mathematical algorithms." C.A. No. 25-768, D.I. 11 at 7.[2] According to Align, the claims focus on "performing a particular type of calculation and using the results in an otherwise conventional 3D image registration process." *Id.* at 8. Densys disagrees and, instead, asserts that the '707 Patent is "directed to applying its

---

[2] The parties agree that Claims 1 and 37 of the '707 Patent are substantially similar, differing only in their recitation as method and system claims, respectively. C.A. No. 25-768, D.I. 17 at 7. Additionally, the claims that depend from Claims 1 and 37 do not add any limitations that are material to the Section 101 analysis. The Court therefore treats Claim 1 of the '707 Patent as representative. *See Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014) (courts may treat a claim as representative if all the claims are "substantially similar and linked to the same abstract idea"); *see also Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018) ("Courts may treat a claim as representative . . . if the parties agree to treat a claim as representative.").

11

'concepts to a new and useful end': an improved intra-oral scanner for dental applications." C.A. No. 25-768, D.I. 17 at 7. Densys contends that the specification explains the need for "a method and system for real time intra orally acquiring and registering three-dimensional measurements and images of intra-oral objects and features," which is satisfied by Claim 1. *Id.*

At *Alice* step one, "the claims are considered in their entirety to ascertain whether their character as a whole is directed to excluded subject matter." *Internet Patents Corp. v. Active Network, Inc.*, 790 F. 3d 1343, 1346 (Fed. Cir. 2015); *see also Affinity Labs of Texas, LLC v. DIRECTV, LLC*, 838 F. 3d 1253, 1257 (Fed. Cir. 2016) ("The abstract idea step of inquiry calls upon us to look at the focus of the claimed advance over the prior art to determine if the claim's character as a whole is directed to excluded subject matter."). "In addition to the claim language. [the Court] may also examine the patent's specification to determine the meaning of the claims as a whole." *Broadband iTV, Inc. v. Amazon.com, Inc.*, 113 F. 4th 1359, 1367 (Fed. Cir. 2024).

The Court finds that the '707 Patent is not directed to an abstract idea. Instead, the '707 Patent is directed to a specific technological improvement in how intra-oral imaging systems acquire and register spatial information. The '707 Patent generally concerns "[a] method and system for real time intra-orally acquiring and registering three-dimensional measurements and images of intra oral objects and features, for primary application in the field of dentistry." '707 Patent at 1:9-14. The invention establishes an intra-oral fixed global registration device (circled in green) located inside the global coordinate space of a patient's oral cavity (circled in blue), which is illustrated in Figure 1 below:

12



**FIG.1**

*Id.* at Fig. 1, 12:32-35, 15:6-16. The measuring and imaging device (circled in red), which is small enough to fit in a patient's mouth, is positioned to take images at different fields of view (red dashed lines) of "intra-oral objects and features" (e.g., teeth and gums) located in a "local coordinate space (circled in orange)." *Id.* at 12:58-65, 15:6-16, 20:1-15, 21:55-64. The captured images are associated with their own "local coordinate space pixel positions," or "coordinate points," which are mapped to their associated position in the fixed global coordinate system. *Id.* at 3:27-36, 21:41-49. This process is called "registration," which entails the "determination, subdivision, and usage of source space and source resolution associated with the measurements and images." *Id.* at 12:21-35, 22:36-45. Through the registration process, a three-dimensional model of the patient's oral cavity is generated. *Id.* at 23:36-47.

According to the '707 Patent, existing prior art registration procedures, such as electromechanical and pattern recognition, exhibited several flaws. *Id.* at 6:34-51. Electromechanical based registration procedures involve highly accurate, complex, and expensive,

13

electromechanical devices for enabling proper control of the measuring and imaging device. *Id.* at 6:52-58. Electromechanical based registration also requires an operator to skillfully and timely "adjust the electro-mechanics for re-positioning the measuring and imaging device in order to change fields of view." *Id.* at 6:58-65. "A particular limitation occurs each time the patient or measuring and imaging device moves whereby, the operator must adjust the electro-mechanics for re-positioning the measuring and imaging device, in order to re-establish the global coordinates, consequently involving re-registration of local coordinates relative to new global coordinates." *Id.* at 6:66-7:7 (cleaned up). Pattern recognition based registration procedures utilize fixed reference markers that are visible in the images taken in the local space. *Id.* at 6:41-46, 7:08-19. "Similar to electromechanical based registration procedures, the re-positioning procedure is clearly required for measuring and imaging a plurality, especially a panoramic or complete set, of intra-oral objects and features located throughout the oral cavity of the patient." *Id.* at 7:19-23. Another limitation of pattern based registration procedures is that the reference markers need to be of proper color, dimensions and shapes or configurations in order to be properly located, fixed and distinguishable" based on the intra-oral objects measured. *Id.* at 7:24-37.

To address these problems, the '707 Patent claims a new method and system for real-time intra-orally acquiring and registering three-dimensional measurements and images of intra-oral objects and features located in the oral cavity of a patient. *See* '707 Patent at Claims 1, 37. Specifically, the issues with the prior art are solved by "establishing an intra-oral fixed global registration position inside the oral cavity of a dental patient" and "recording the various positions and orientations of the measuring device relative to the same intra-oral fixed global registration position, where the intra-oral fixed global registration position is not limited to being in any particular field of view." *Id.* at 11:22-35.

In determining whether claims are directed to ineligible subject matter under § 101, courts have found it helpful "to compare claims at issue to those claims already found to be directed to an abstract idea in previous cases." *Enfish LLC v. Microsoft Corp.*, 822 F.3d 1327, 1334 (Fed. Cir. 2016). In asserting that the claims of the '707 Patent are directed to an abstract idea, Align contends that the claims are more similar to the claims that the Federal Circuit found directed to ineligible subject matter in *Geoscope Techs. Pte. Ltd. v. Google LLC*, No. 2024-1003, 2025 WL 1276235 (Fed. Cir. May 2, 2025). In *Geoscope*, the Federal Circuit found that the claims were directed to "collecting, comparing, and reporting data using conventional components," when the claims required "determining the location of a mobile device by collecting data about known locations (such as information about the properties of signal transmitted by different cell towers), organizing that data in database, and then comparing that data to measurements from the mobile device." 2025 WL 1276235 at *2. The Federal Circuit emphasized that "nothing in the language of the asserted claims offers a specific and concrete advance in geolocation technology." *Id.* at *3 (cleaned up).

Densys, in contrast, contends that the claims here in the '707 Patent are most similar to the claims found directed to patent eligible subject matter in *Thales Visionix v. United States*, 850 F. 3d 1343 (Fed. Cir. 2017). In *Thales*, the claims were directed to mounting inertial sensors on both a tracked object and moving platform, receiving data from those two sensors, and calculating the orientation of the tracked object relative to the moving platform. 850 F. 3d at 1348-49. The Federal Circuit held that the claims were "not merely directed to the abstract idea of using 'mathematical equations for determining the relative position of a moving object to a moving reference frame,'" but rather, "a particular configuration of inertial sensors and a particular method of using the raw data from the sensors in order to more accurately calculate the position and

15

orientation of an object on a moving platform." *Id.* at 1348-49. Thus, the claims were "directed to a new and useful technique for using sensors more efficiently to track an object on a moving platform." *Id.* at 1349. While the Federal Circuit recognized that the claims "utilize mathematical equations to determine the orientation of the object relative to the moving reference frame," it ultimately held that the required equations were merely a "consequence" of the invention, and their inclusion "does not doom the claims to abstraction." *Id.* at 1348-49.

The Court agrees with Densys that the claims of the '707 Patent are more akin to those at issue in *Thales* rather than those at issue in *Geoscope*. Like the claims in *Thales* were directed to a specific improvement in motion-tracking technology achieved through a particular sensor configuration, the claims here are directed to a specific improvement in intra-oral technology achieved through a particularized process for acquiring and registering three-dimensional measurements in real time. *Thales Visionix*, 850 F. 3d at 1349. The specification of the '707 Patent emphasizes that the claimed invention addresses inaccuracies and inefficiencies in prior art registration techniques caused by repositioning and movement of the imaging device, which caused errors between successive measurements. *See* '707 Patent at 6:34-7:37. The claimed invention addresses these deficiencies by using a fixed intra-oral reference point that maintains measurements from different fields of view as additional measurements are obtained, thereby enabling the creation of an accurate real-time three-dimensional composite of intra-oral images. *Id.* at 4:4-65.

The claims do not merely recite the abstract "concept of calculating a particular type of information and analyzing that information," as Align contends. C.A. No. 25-768, D.I. 11 at 9. While the claims involve data collection and mathematical equations, the Federal Circuit has cautioned against oversimplifying claims by stripping away their technological context. *Thales*

*Visionix*, 850 F. 3d at 1349; *see also McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F. 3d 1299, 1313 (Fed. Cir. 2016) ("[C]ourts 'must be careful to avoid oversimplifying the claims' by looking at them generally and failing to account for the specific requirements of the claims." (quoting *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d. 607, 611 (Fed. Cir. 2016))). Like *Thales*, the mathematical equations used in the '707 Patent claims are not used in the abstract; rather, the mathematical equations are used to determine the relationship among the measurements taken from different viewpoints. '707 Patent at 22:3-13, 22:46-59. Thus, the calculations are merely a "consequence" of the claimed invention and are applied in service of the technological improvement in intra-oral imaging. Therefore, the Court finds that the claims do not merely recite the abstract idea of collecting, processing, and calculating data, but rather a particular technological solution to problems arising in three-dimensional intra-oral imaging.

Furthermore, the Court is not persuaded by Align's characterization of the recited components as "entirely functional and generic," thus lacking specialized hardware. C.A. No. 25-768, D.I. 20 at 2. The Court agrees that limiting otherwise abstract processes to a particular field or use of technological environment does not, standing alone, render claims patent-eligible. *See Alice*, 573 U.S. at 222 (The "prohibition against patenting abstract ideas cannot be circumvented by attempting to limit the use of [the idea] to a particular technological environment." (alteration in original) (quoting *Bilski*, 561 U.S. at 610-11)). Nor does the recitation of conventional imaging hardware become non-abstract simply because the hardware is used intra-orally. However, the Court does not read the claims as directed to the abstract idea of "calculating the position of an imaging device relative to a fixed location." C.A. No. 25-768, D.I. 11 at 6. Instead, the Court finds that the claim language of the '707 Patent ties the recited hardware components to a particular measurement and registration technique. Thus, the claims, read as a whole, recite a specific

17

technological improvement directed towards improving three-dimensional intra-oral imaging, rather than an abstract idea untethered from technological means. *See Internet Patents Corp.*, 790 F. 3d at 1346. Like the claims found eligible in *Thales*, the claims of the '707 Patent use conventional hardware components in a nonconventional configuration to improve a technological process, and therefore cannot be reduced to an abstract idea divorced from the claimed technological improvement. Because the Court finds the claims of the '707 Patent are directed to patent-eligible subject matter, there is no need to proceed to step two of the *Alice* framework. *See Enfish*, 822 F.3d at 1339 (finding that the court did not need to proceed with the *Alice* analysis after determining that the claims were not directed to an abstract idea).

### 2.    The '257 Patent is Not Directed to an Abstract Idea

Align also asserts that the asserted claim of the '257 Patent is "directed to the abstract idea of storing random patterns." C.A. No. 25-768, D.I. 11 at 10. According to Align, Claim 1 can be divided into four steps: "(1) generating and storing a two-dimensional array of random patterns; (2) projecting the array onto an intra-oral scene at different angles and acquiring images of the projected array; (3) calculating the three-dimensional positions of the patterns in each image by calculating the parallax and two-dimensional positions of the patterns; and (4) constructing a 3D model based on the calculations in step 3." *Id.* Align contends that "the focus of the claimed advance is the idea of generating random patterns that can be stored in memory," and the claims fail to disclose how the random patterns are created or stored. *Id.* at 11.

Densys responds that the asserted claim of the '257 Patent is "directed to a dental-hardware specific system of three-dimensional modeling of the surface features of an intra-oral scene for a dental application." C.A. No. 25-768, D.I. 17 at 11 (citing '257 Patent at 11:15-17). Densys asserts that Claim 1 achieves this by "(1) using a specific pattern generator to create random patterns, (2) storing patterns, (3) projecting them, (4) acquiring images of the projected patterns,

(5) calculating the parallax between the project patterns by comparing them to the stored patterns, and (6) constructing a 3D model of the mouth based on the calculations." *Id.* at 11-12. Densys further contends that the '257 Patent passes the *Alice* test because "the invention is directed to a new and useful application of pattern generation that can generate patterns that (1) are random and, at the same time, (2) can be stored." *Id.* at 12 (citing '257 Patent at 4:58-60).

The Court finds that the '257 Patent is not directed to an abstract idea. The '257 Patent is generally directed to "[a] method for creating three-dimensional models of intra-oral scenes features." '257 Patent at Abstract. The specification explains that, in dental work, there is "a significant limitation" in the lack of surface detail in various situations. *Id.* at 2:50-51, 1:66-2:2. The lack of surface detail makes it difficult to unambiguously match surface features for accurate triangulation[3]. *Id.* at 2:52-54. This issue is addressed through the use of structured illumination, a method in which a beam of light is scanned across intra-oral scenes to create arrays of highlighted lines or points that facilitate feature matching in triangulation. *Id.* at 2:54-60. However, "[o]ne of the recognized problems in using structured light in lines or points is that of aliasing, or false matching of the structured illumination." *Id.* at 4:1-3. Plain points of light are typically indistinguishable from one another, which may result in discrepancies in point matching between images. *Id.* at 4:3-6. "If two different points [or lines] are mistakenly matched when triangulating different images, the resulting z-axis calculation will be in error, and the 3D model will be defective." *Id.* at 4:6-9. To mitigate anti-aliasing, "real-time scanning using electronic imaging, synchroniz[es] the output from different image sensors." *Id.* at 4:9-12. This approach, however,

---

[3] Active triangulation is a method for producing maps or three-dimensional distribution models of surficial surface. '707 Patent at 2:12-22. Active triangulation "uses an active light spot and several cameras for measuring the distribution of objects on a surface. Scanning the active light spot can produce a whole map of a surface." *Id.* at 2:13-17.

"cannot be employed for projected (non-scanned) images or for stored images where features are matched after the structured illumination has been projected, because there is no timing information." *Id.* at 4:12-16.

The specification describes several prior art anti-aliasing methods employing various schemes for encoding structured illumination. *Id.* at 4:17-20. One prior art reference describes "encoding spatially-modulated predetermined patterns in scanned light, which can be unambiguously matched in different images." *Id.* at 4:22-24. Other prior art approaches require "illuminating the same areas of the intra-oral scene with patterns over a prolonged time period or repeatedly at different times." *Id.* at 4:27-29. However, such practices "can introduce inaccuracies in the measurements due to any relative movement between the dental patient, the apparatus that projects the illumination, and the apparatus that captures the images (camera)." *Id.* at 4:26-33. Moreover, handling or manipulation by the dental practitioner may further increase inaccuracies by introducing additional movement. *Id.* at 4:33-36. The specification identifies another prior art reference directed to generating spatially modulated random patterns through laser speckle. *Id.* at 4:38-43. Those random patterns may be used similarly to predetermined patterns to identify corresponding points across multiple images. *Id.* However, because the random patterns "can be neither stored nor reproduced," multiple images of the intra-oral scene must be captured simultaneously to ensure that the same random patterns appear in the different images. *Id.* at 4:58-64. Additionally, the specification explains that "an important limitation is imposed by the small space inside the mouth, which does not permit the introduction of bulky apparatus." *Id.* at 5:4-6.

The '257 Patent purports to solve these shortcomings in the prior art by providing a system and method for three-dimensional modeling of intra-oral features that enables the use of a compact apparatus within the confines of the mouth, permits simultaneous acquisition of three-dimensional

20

information across the entire intra-oral scene to reduce errors cause by movement, and allows extraction of three-dimensional information from partial scenes lacking substantial surface detail. *Id.* at 5:18-27.

As explained above, courts have found it helpful "to compare claims at issue to those claims already found to be directed to an abstract idea in previous cases." *Enfish*, 822 F.3d at 1334. In asserting that Claim 1 of the '257 Patent is directed to patent ineligible subject matter under § 101, Align relies again on *Geoscope*, where the claims required "'collecting calibration data for a number of locations within a geographic region' and 'analyz[ing]' that data to associate with 'particular points (e.g., grid points) within the geography region." 2025 WL 1276235 at *2. There, the Federal Circuit found that there was "nothing in the claim language requiring any specific method of transforming calibration data into grid points or describing how such grid points are structured," and thus the patent failed to represent a specific technical improvement. *Id.* at *4.

Densys, in contrast, relies on *Koninklijke KPN N.V. v. Gemalto M2M GmbH*, 942 F.3d 1143 (Fed. Cir. 2019). In *Koninklijke*, the Federal Circuit held that the claims were not directed "to the abstract idea of data manipulation," but were "directed to an improved check data generating device that enables a data transmission error detection system to detect a specific type of error that prior art systems could not." 942 F.3d at 1145. Specifically, the claims provided for an error-checking device that applied a permutation to original data "in time." *Id.* at 1148. The Federal Circuit ultimately found that, "[b]y requiring that the permutation applied to original data be modified 'in time,' [the claims] recite[d] a specific implementation of varying the way check data is generated that improves the ability of prior art error detection systems to detect systematic errors." *Id.* at 1150.

In the Court's view, the asserted claim of the '257 Patent is more analogous to the claims at issue in *Koninklijke*, rather than those in *Geoscope*. Like the claims in *Koninklijke* recite a "specific implementation" for improving the reliability of error detection rather than an abstract result divorced from any technological means, the asserted claim in the '257 Patent recites a particularized method for improving intra-oral three-dimensional imaging through the projection of random patterns onto intra-oral surfaces and processing of the random patterns to obtain spatial measurements. *See Koninklijke*, 942 F.3d at 1151. Align's reliance on *Geoscope* is unpersuasive because the claims in *Geoscope* were found to recite a result-oriented concept of organizing and displaying geographic information without specifying any concrete mechanism for achieving the claimed result. 2025 WL 1276235 at *3. By contrast, the claims of the '257 Patent do not simply claim the result of improved three-dimensional imaging. Rather, the claims set forth a specific technical process centered on random pattern projection and corresponding image acquisition techniques that explain how the claimed improvement is achieved. Unlike the untethered and result-oriented claims in *Geoscope*, the claims in the '257 Patent recite a specific technological process for improving the accuracy and functionality of intra-oral imaging systems.

Align also cites to *In re TLI Commc'ns LLC Patent Litig.*, where the Federal Circuit found that the recited telephone unit and server performed conventional functions, namely capturing, transmitting, classifying, and storing digital images, and therefore operated "merely [as] a conduit for the abstract idea of classifying an image and storing the image based on its classification." 823 F.3d. at 612. In contrast to *In re TLI Commc'ns LLC Patent Litig.*, the '257 Patent recites a specific imaging procedure involving projected random light patterns and spatial calculations to reconstruct three-dimensional images of intra-oral object and features, which is an improvement in intra-oral three-dimensional imaging technology. Thus, the Court finds that the claims of the '257 Patent

22

are directed to a specific improvement in the technical process for improving the accuracy and functionality of intra-oral imaging systems rather than an abstract idea.

For the reasons set forth above, the Court denies Align's Motion to Dismiss the '707 Patent and '257 Patent pursuant to 35 U.S.C. § 101.

> **B.      Densys Fails to Adequately Plead Direct Infringement of the '257 Patent Against Align**

Densys has failed to plausibly allege that Align's product has a "memory," as required by Claim 1 of the '257 Patent. The '257 Patent requires, *inter alia*, "a pattern generator for generating a two-dimensional array of a plurality of random two-dimensional or one-dimensional patterns" and "a projectable medium that contains a memory for storing said array, said memory operative to allow projecting said array." '257 Patent at Claim 1. Align contends that Densys has failed to allege that (1) Align's projected pattern is "random," and (2) Align's product contains a "memory" for storing the array of patterns. C.A. No. 25-768, D.I. 11 at 12. The Court addresses each argument in turn.

> **1.      At the Pleadings Stage, the Court Declines to Construe the Term "Random Patterns"**

Align claims that its iTero Lumina product does not infringe Claim 1 of the '257 Patent because Align's product does not use "random patterns." *Id.* Rather, it projects predetermined, hexagonal spot patterns that are overlaid using a "fixed diffractive element." *Id.* at 13. Densys responds that the '257 Patent describes "random patterns" to mean that the "patterns not only differ from each other, but also are distributed and have a spatial relationship with other patterns of the image." C.A. No. 25-768, D.I. 17 at 15 (quoting '257 Patent at 8:65-67, 8:55-60). In support, Densys's Preliminary Claim Chart for U.S. Patent No. 8,665,257 includes an image of a pattern projected from the Align iTero Lumina, which shows varied shapes and spatial distributions in the image of the projected spots. *See* C.A. No. 25-768, D.I. 1-4 at 3-4; D.I. 17 at 16.

The core of the parties' dispute is the meaning of the term "random patterns." Densys claims that the '257 Patent uses "random patterns" to mean patterns that are "randomly structured and randomly distributed . . . whether or not the overall array is caused by hexagonal patterns overlaid on each other." D.I. 17 at 17. Densys points to the prosecution history for support, where "Densys distinguished the '257 Patent over prior art because 'the claimed random patterns are random as they are unique in shape, or randomly shaped and/or randomly distributed.'" *Id.* at 15 (emphases omitted). In contrast, Align reasons that its product uses overlaid hexagonal patterns, which "conclusively demonstrates that the patterns are not 'random,'" regardless of whether smaller dissected portions are random. C.A. No. 25-768, D.I. 20 at 6. In essence, the parties disagree on whether the term "random pattern" requires the underlying pattern in the projection to be random, or whether only the resulting projected image must be random. *See* C.A. No. 25-768, D.I. 20 at 6-7; D.I. 17 at 15-16.

The issue of how to construe the term "random pattern" is best reserved for claim construction, not a motion to dismiss. *See Mattco Indus. Prods., LLC v. LTA Distrib., LLC*, No. 25-494, 2025 WL 2431654, at *2 (D. Del. Aug. 22, 2025) (Bryson, J., sitting by designation) ("District courts have 'repeatedly held that if a court is required to construe the meaning of claim terms . . . in order to resolve a motion to dismiss . . . the motion should be denied, because this type of analysis is inappropriate at the pleading stage." (ellipses in original) (quoting *Novartis Pharms. Corp. v. Actavis, Inc.*, No. 12-366, 2012 WL 6212619, at *7 (D. Del. Dec. 5, 2012))); *see also Eagle Pharms., Inc. v. Hospira, Inc.*, 424 F. Supp. 3d 355, 358-59 (D. Del. 2019) (noting that "a claim construction dispute [] is not suitable for resolution in the context of a motion to dismiss"); *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1349 (Fed. Cir. 2018) (same). The Court's resolution of infringement based on the term "random patterns" necessarily relies on a

24

determination of *what* must be random, the underlying pattern or the resulting image. Hence, because resolving this issue requires claim construction of the term "random patterns," the Court denies Align's Motion to Dismiss on this basis.[4]

> **2.    Densys Has Not Plausibly Alleged That Align's Product Contains a "Memory"**

Align claims that its product does not satisfy the '257 Patent's requirement for "memory for storing said array [that is] operative to allow projecting." '257 Patent at Claim 1. Align reasons that Densys "vaguely points to iTero Lumina's 'IOS head' but fails to identify any component as corresponding to the claimed 'memory.'" C.A. No. 25-768, D.I. 11 at 12. Align further reasons that, rather than a "memory," Align's product uses "a diffractive element." *Id.* at 13. This diffractive element, according to Align, is a "fixed physical object, rather than some malleable 'memory' such as software or computer code that stores and retrieves information." C.A. No. 25-768, D.I. 20 at 9. Densys disagrees, reasoning that the diffractive element acts as a "memory" that stores the patterns that are then projected. C.A. No. 25-768, D.I. 17 at 18-19. For this notion, Densys points to Align's own patent associated with the iTero scanner, U.S. Patent No. 11,563,929 ("'929 Patent"). The '929 Patent explains that the different diffractive elements "generate spots having different respective shapes." '929 Patent at 63:4-5. Densys infers from the diffractive element's ability to generate spots of different shapes that the different diffractive elements must "store different patterns." C.A. No. 25-768, D.I. 17 at 18.

---

[4] Align contends that "Densys fail[ed] to substantively address Align's arguments regarding the doctrine of equivalents" and thus forfeited the issue. C.A. No. 25-768, D.I. 20 at 8 n.2. Given that Densys reasoned that these arguments will be developed at claim construction, (C.A. No. 25-768, D.I. 17 at 18) and the Court agrees with Densys regarding reserving this issue for claim construction, the Court disagrees with Align that Densys forfeited the issue of infringement under the doctrine of equivalents.

The Court agrees with Align. Densys's argument omits key context provided in the '929 Patent's specification, which is that "every spot generated by a specific [diffractive element] has the same shape, and the shape of spots generated by at least one [diffractive element] is different from the shape of spots generated by at least one other [diffractive element]." '929 Patent at 63:5-8. In other words, the '929 Patent makes clear that each diffractive element is only capable of generating one shape of spots, whereas Densys's arguments appear to rely on the presumption that one diffractive element can generate (and thereby store) multiple patterns. Absent any evidence supporting this presumption, the Court cannot infer that the diffractive element in Align's product acts as a "memory." Instead, the Court agrees with Align's assessment that the diffractive element appears to be a "fixed physical object." C.A. No. 25-768, D.I. 20 at 9. The remaining support Densys provides in its claim chart fares no better. Densys's claim chart only vaguely refers to "projectors in the Lumina IOS head" that can project an array of spots. *See* C.A. No. 25-768, D.I. 1-4 at 9. However, Densys provides no indication whatsoever that the Lumina IOS head saves the patterns in a memory, other than relying on the existence of the IOS head itself. The Court cannot make the logical leap that Align's product contains a memory based on the mere existence of a head containing projectors.

For these reasons, Densys has not plausibly alleged direct infringement of the '257 Patent. Because these deficiencies can be cured by pleading additional facts, the Court grants Align's Motion to Dismiss with respect to direct infringement of the '257 Patent without prejudice.

### C.    Densys Fails to Adequately Plead Willful Infringement Against Align and Medit

To sufficiently plead willful infringement, a patentee must allege facts plausibly showing that the accused infringer: (1) knew of the patents-in-suit, (2) infringed the patents after acquiring that knowledge, and (3) knew, or should have known, that its conduct in doing so amounted to

26

infringement of the patents. *Välinge Innovation AB v. Halstead New England Corp.*, No. 16-1082, 2018 WL 2411218, at \*13 (D. Del. May 29, 2018), *report and recommendation adopted*, 2018 WL 11012901 (D. Del. Nov. 6, 2018). Allegations of either pre-suit and post-suit knowledge of the patents-in-suit and infringement of those patents may be permissible for purposes of sufficiently pleading willful infringement. *See generally Cleveland Med. Devices Inc. v. ResMed Inc.*, 696 F. Supp. 3d 4 (D. Del. 2023).

### 1. Densys's Has Not Sufficiently Pled Willful Infringement Against Align

#### a. Densys Fails to Plausibly Allege Align's Knowledge of the '257 Patent Prior to the Alleged Infringement

Densys alleges that Align knew or should have known of the '257 Patent because "Align knows and has familiarity with Densys, which is a known pioneer in intraoral scanners." C.A. No. 25-768, D.I. 1 ¶ 55. Densys claims that these "allegations regarding Align's familiarity with Densys and its technology are enough for a plausible inference of pre-suit knowledge and infringement of the '257 Patent." D.I. 17 at 20.

The Court disagrees with Densys. General allegations of knowledge of a patent based on the parties' status in the industry are insufficient to support a willful infringement claim. *See Data Health Partners, Inc. v. Teladoc Health, Inc.*, 734 F. Supp. 3d 315, 329 (D. Del. 2024) ("[T]he general allegation that status as a market leader should impute knowledge of a competitor's patent is insufficient to support a plausible claim . . . [of] pre-suit knowledge that its activities infringed the Asserted Patents."); *VLSI Tech. LLC v. Intel Corp.*, No. 18-0966, 2020 WL 3488584, at \*5 (D. Del. June 26, 2020) (finding that "[a]llegations about monitoring competition generally" do not establish knowledge of infringement of asserted patents). Accordingly, Densys has not plausibly alleged that Align had knowledge of the '257 Patent prior to the alleged infringement.

27

**b.     Densys Fails to Plausibly Allege That Align Knew or Should Have Known That It Was Infringing the '707 Patent**

Densys's allegations regarding Align's willful infringement of the '707 Patent are not sufficiently pled. Align does not dispute that it had pre-suit knowledge of the '707 Patent given that several of its own patents and patent applications cite to the '707 Patent. *See* C.A. No. 25-768, D.I. 1 ¶ 26; D.I. 11 at 19-20 (not disputing knowledge). When knowledge of a patent is established, courts have found that a plaintiff has met its burden for a willful infringement pleading when the defendant was on notice that its accused product was tied to the invention in the patent. For example, this Court found that a plaintiff met its burden by pleading that its counsel contacted defendant notifying it of the association of the plaintiff's patent to the defendant's product. *See Hills Point Indus. LLC v. Just Fur Love LLC*, No. 22-1256, 2023 WL 8804046, at *2 (D. Del. Dec. 20, 2023) (finding willful infringement allegations plausible where counter-claim plaintiff contacted counterclaim-defendant regarding the association of plaintiff's asserted patent to counterclaim-defendant's product); *see also Bio-Rad Lab'ys Inc. v. Thermo Fisher Sci. Inc.*, 267 F. Supp. 3d 499, 501 (D. Del. 2017) (finding willful infringement allegations plausible where plaintiff notified defendant of infringement of the asserted patent on multiple occasions); *Tonal Sys., Inc. v. ICON Health & Fitness, Inc.*, No. 20-1197, 2021 WL 1785072, at *6 (D. Del. May 5, 2021), *report and recommendation adopted*, No. 20-1197, 2021 WL 5860783 (D. Del. Aug. 12, 2021) (finding willful infringement allegations plausible where counterclaim-plaintiff notified counterclaim-defendant that its device infringed the patents in suit and how).

In this action, Densys does not allege any facts tying Align's knowledge of the '707 Patent to its allegedly infringing products. Densys also does not allege that it provided any notice to Align that Align was infringing the '707 Patent. Densys merely claims that Align's citations and references to the '707 Patent in its own patents, alone, put Align on notice of its infringement. *See*

28

C.A. No. 25-768, D.I. 1 ¶ 26.  That cannot be permissible.  If this Court were to agree with Densys, patentees would be at risk of willful infringement whenever they cite another patent as a reference. Just as this Court has not been "convinced that a patent examiner's reference to a single asserted patent, among multiple other references, is sufficient to state a claim for willfulness," *Hills Point*, 2023 WL 8804046, at *4, the same holds true for patents merely referenced on the face of another patent.

Densys's remaining allegations regarding the '707 Patent fare no better.  For instance, Densys alleges that Align knew of its infringement based on Align's "market participation and knowledge concerning the foundational patents in the industry."  C.A. No. 25-768, D.I. 1 ¶ 25. Densys also alleges that Align was aware of a willful infringement verdict in a completely separate litigation involving the '707 Patent, *Densys v. 3Shape*, C.A. No. 6:19-cv-680 (W.D. Tex.), because Align's products are "similar in all materials respects to 3Shape's products" and Align is "a significant player in the dental imaging market." *Id.* ¶ 24.  Courts "ha[ve] not been convinced of the sufficiency of pleadings charging knowledge that is based upon a defendant's participation in the same market, media publicity and unrelated litigation by the defendant's competitors concerning the relevant patent." *MONEC Holding AG v. Motorola Mobility, Inc.*, 897 F. Supp. 2d 225, 232 (D. Del. 2012).  The Court adopts the rationale articulated in *MONEC Holding AG*. Accordingly, the Court will not infer that Align knew it infringed the '707 Patent because of the existence of a completely separate litigation, or based on Align's general participation in the market.  Such allegations are overly speculative.  Absent specific factual allegations tying Align's pre-suit knowledge of the '707 Patent to its alleged infringing conduct, Densys has not met its pleading burden for willful infringement.

2.    **Densys's Fails to Adequately Plead Willful Infringement Against Medit**

a.    **Densys Fails to Plausibly Allege Medit's Pre-Suit Knowledge of the '257 or '707 Patents**

Densys alleges that Medit had knowledge of the '257 and '707 Patents based on the following pre-suit conduct: (1) an International Dental Show where both Densys and Medit presented 3D scanners on multiple occasions, and "Medit's representatives visited Densys's booth" (C.A. No. 25-769, D.I. 18 ¶ 23); (2) a publicly available user manual for Densys's Mia3D scanner which listed the '257 and '707 Patents (*id.*); (3) Medit's own patents which reference patents owned by Densys that are similar to or in the same family as the '257 Patent (*id.* ¶ 24); (4) Medit's "numerous funding rounds and [] eventual acquisition" by a private equity firm (*id.* ¶¶ 25, 26); (5) the willful infringement verdict in *Densys v. 3Shape*, C.A. No. 6:19-cv-680 (W.D. Tex.) (*id.* ¶ 27). The Court rejects the fifth allegation based on the Court's reasoning regarding Densys's allegations against Align, *supra* Section III.C.1.b. Densys's remaining allegations that Medit had pre-suit knowledge of the '257 and '707 Patents are also deficient for the reasons discussed below.

*First*, the fact that Medit's representatives visited Densys's booth at two International Dental Shows is insufficient to infer knowledge of the Asserted Patents prior to the alleged infringement. Even if these shows made Medit "aware of Densys's Mia3D product," (*id.* ¶ 23), Densys does not allege that these shows specifically made Medit aware of the patents related to the Mia3D product. *Id.* ¶ 23 (not alleging). Instead, Densys infers that Medit's alleged awareness of the Mia3D product from the show would have made Medit aware of the '257 and '707 Patents, which "were listed in the publicly available Mia3D user manual" as covering the Mia3D product. *Id.* But the mere existence of the Mia3D user manual, without any allegation that Medit ever read said manual—during the International Dental Shows or otherwise—is insufficient for this Court to infer that Medit knew of the patents listed inside. *See Kirsch Rsch. & Dev., LLC v. Tarco*

30

*Specialty Prods., Inc.*, 2021 WL 4555802, at *2 (W.D. Tex. Oct. 4, 2021) (declining to find that "a vendor's attendance at a trade show raises a reasonable inference that the vendor has knowledge of every other attending vendors' patents, even if other vendors' products are 'well-known' and marked"). The Court also finds Densys's citation to *Technoprobe S.p.A. v. Formfactor, Inc.*, 2024 WL 2271885 (D. Del. May 20, 2024), unpersuasive. In *Technoprobe*, the defendant attended a specific presentation put on by the plaintiff. *Id.* at *4. Thus, Defendant "took an active step in observing the activities of Plaintiff." *Id.* In the present case, Medit did not attend any specific presentation put on by Densys. Rather, Densys merely alleges that Medit visited Densys's booth at a larger dental show, which is akin to the situation in *Kirsch*.

*Second*, the Court rejects Densys's arguments that Medit's knowledge can be imputed from its citations to similar or related patents. Specifically, during prosecution of a Medit patent, Medit cited a Densys patent that "shares substantial portions of its specification" with the '257 Patent. *See* D.I. 18, ¶ 24; D.I. 22 at 13 (Medit not disputing). In another prosecution, Medit cited "Densys's Spanish patent, which claims priority to the same PCT application (PCT/IL2006/000040)" as the '257 Patent. D.I. 18 ¶ 24; D.I. 22 at 13 (Medit not disputing). The Court disagrees with Densys. "[M]ere knowledge of a related patent . . . does not create a plausible inference that a defendant had knowledge of the patent in suit." *Cold Spring Harbor Lab'y v. Guardant Health, Inc.*, No. 25-263, 2025 WL 2898942, at *5 (D. Del. Oct. 10, 2025); *see also VLSI Tech.*, 2020 WL 3488584, at *5 ("Allegations about . . . patents not asserted here do not plausibly establish that [defendant] had knowledge of infringement of the [asserted] patents.").

*Third*, Densys infers Medit's willful infringement based on Medit's acquisition of a private equity firm. *See* D.I. 18 ¶ 25. Densys specifically alleges that "numerous funding rounds and the eventual acquisition included substantial due diligence that showed that Medit infringed the

31

patents-in-suit." *Id.* ¶ 26. Absent from Densys's claim is any allegation that Medit actually became aware of the '257 and '707 Patents during its due diligence. Densys merely presumes that Medit learned of the '257 and '707 Patents through its due diligence in an acquisition. That is entirely conclusory and, thus, deficient.

*Fourth*, even if Densys *had* plausibly alleged that Medit had knowledge of the Asserted Patents, Densys's willful infringement claim would still fail because it has not provided specific factual allegations that Medit was on notice of infringement of those patents (*see supra* Section III.C.1.b, discussing the requirement of allegations tying knowledge of the Asserted Patents to knowledge of infringement). Absent these factual allegations, Densys has not sufficiently pled a willful infringement claim against Medit.

For these reasons, Densys has not adequately alleged facts to infer that Medit was aware of the '257 Patent and/or the '707 Patent prior to the alleged infringement, infringed the '257 Patent and/or the '707 Patent after becoming aware of them, and knew or should have known that its conduct amounted to infringement.

### b. Densys Fails to Plausibly Allege Medit's Post-Suit Knowledge of the '257 or '707 Patents

In addition to the pre-suit conduct that Densys alleges, Densys also alleges that the filing of the original complaint in this action acted as notice to Medit of its infringement. C.A. No. 25-769, D.I. 18, ¶ 28. Medit contends that Densys has not adequately alleged facts to infer Medit's post-suit knowledge of the Asserted Patents, because this Court has previously "adopt[ed] the view that '[t]he complaint itself cannot serve as the basis for a defendant's actionable knowledge' for a willful infringement claim." *Cleveland Med. Devices*, 696 F. Supp. 3d at 13-14.

Courts in this district are deeply divided on whether a complaint can serve as the basis for knowledge of willful infringement. *See DSM IP Assets, B.V. v. Honeywell Int'l, Inc.*, 700 F. Supp.

3d 189, 199-200 (D. Del. 2023) (collecting cases describing the split). This is especially true where an amended complaint has been filed, as here. *See id.* at 200. This Court's decision in *Cleveland Medical Devices* involved a situation where only one complaint was filed and thus did not contemplate whether an original complaint can give notice to a defendant regarding infringement when an amended complaint has been filed. However, this Court has considered a scenario involving an amended pleading in *Hills Point*. There, the defendant's answer included counterclaims of infringement of several patents, including allegations of willful infringement. 2023 WL 8804046, at *1. Following an amended complaint, the defendant filed an amended answer alleging "additional willful infringement allegations based on the [i]nitial [a]nswer." *Id.* In *Hills Point*, this Court maintained its position that "the complaint itself cannot serve as the basis for [plaintiff's] knowledge of the asserted patents." *Id.* at *4 (quoting *Cleveland Med. Devices*, 696 F. Supp. 3d at 13-14).[5]

Other courts in this district have held similarly. *See Wrinkl, Inc. v. Facebook, Inc.*, No. 20-1345, 2021 WL 4477022, at *7 (D. Del. Sept. 30, 2021) (explaining that, in the context of an amended complaint, "when there is no pre-suit knowledge, it is not sufficient merely to allege the defendant has knowledge since the filing of the original complaint and has not ceased doing whatever the infringing behavior is alleged to be"); *Callwave Commc'ns LLC v. AT & T Mobility LLC*, No. 12-1701, 2014 WL 5363741, at *1 (D. Del. Jan. 28, 2014) (declining to "allow allegations of willfulness" in an amended complaint "based solely on conduct post-dating the filing

---

[5] The Court recognizes that it has previously found that "post-suit indirect and willful infringement can be based on knowledge obtained from the filing of [pleadings]." *Roche Diabetes Care, Inc. v. Trividia Health, Inc.*, C.A. No. 24-668, D.I. 62 at 17. There, this issue was only discussed briefly and did not ultimately bear on whether knowledge had been alleged. *See id.* at 14-18 (finding that knowledge of willful and indirect infringement were not sufficiently alleged). Upon further consideration, and consistent with the reasoning articulated in *Hills Point* and *Cleveland Medical*, the Court finds that the complaint cannot serve as the basis for a defendant's knowledge.

of the original complaint"). Accordingly, the Court finds that Densys's complaint does not sufficiently plead post-suit knowledge for purposes of a willful infringement claim.

For all these reasons, Densys has not plausibly pled that either Align or Medit has willfully infringed the '257 and '707 Patents. With respect to Align, Densys has failed to plausibly plead knowledge of the '257 Patent, and has failed to plausibly plead knowledge of infringement of the '707 Patent. With respect to Medit, Densys has not plausibly pled pre-suit knowledge of the '257 and '707 Patents, or post-suit knowledge of infringement of the '257 and '707 Patents. Because the allegations in Densys's Complaint against Align (C.A. No. 25-768, D.I. 1) and Densys's First Amended Complaint against Medit (C.A. No. 25-769, D.I. 18) can be cured with additional facts, the Court dismisses Densys's willful infringement claims without prejudice.

### D.    Densys Fails to Sufficiently Plead Indirect Infringement Against Align and Medit

Both Align and Medit have moved to dismiss Densys's induced infringement claims and its contributory infringement claims. *See* C.A. No. 25-768, D.I. 11 at 6-7; C.A. No. 25-769, D.I. 22 at 8. Like willful infringement, "[b]oth induced and contributory infringement require knowledge of the asserted patent" and "knowledge of infringement of the patent." *Cleveland Med. Devices*, 696 F. Supp. 3d at 10.

To plead induced infringement under 35 U.S.C. § 271(b), "a complaint must plead facts plausibly showing that the accused infringer specifically intended another party to infringe the patent and knew that the other party's acts constituted infringement." *Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1379 (Fed. Cir. 2017) (cleaned up) (quoting *In re Bill of Lading Transmission & Processing Sys. Pat. Litig.*, 681 F.3d 1323, 1339 (Fed. Cir. 2012). To plead contributory infringement under 35 U.S.C. § 271(c), a plaintiff must plead, *inter alia*, that "the

34

component has no substantial noninfringing uses." *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1326 (Fed. Cir. 2010); *Artrip v. Ball Corp.*, 735 F. App'x 708, 713 (Fed. Cir. 2018).

### 1.    Densys Fails to Plausibly Allege That Align Knew or Should Have Known That It Was Infringing the '257 or '707 Patents

Since the Court has already established that Densys has failed to plausibly plead that Align knew or should have known that it was infringing the '707 and '257 Patents, *see supra* Section III.C.1, Densys's indirect infringement claim against Align fails on the same basis. *See Bio-Rad Lab'ys, Inc. v. Int'l Trade Comm'n*, 998 F.3d 1320, 1335 (Fed. Cir. 2021) (explaining that induced infringement under 35 U.S.C. § 271(b) requires, *inter alia*, proof that "the defendant knew or should have known that the induced acts constitute patent infringement" and that contributory infringement under 35 U.S.C. § 271(c) requires, *inter alia*, proof that "the defendant had knowledge of patent infringement"). Since Densys has not sufficiently pled the requisite knowledge for indirect infringement, the Court need not decide whether Densys has pled facts sufficient to meet the additional aforementioned requirements for either an induced infringement or contributory infringement claim. The Court thus dismisses Densys's claims for willful, induced, and contributory infringement against Align without prejudice.

### 2.    Densys Fails to Allege Plausibly That Medit Knew or Should Have Known That It Was Infringing the '257 or '707 Patents

The Court has already found that Densys has failed to allege Medit's pre-suit knowledge of infringement of the '257 Patent or '707 Patent for purposes of willful infringement. *See supra* Section III.C.2.a. For the same reasons, the Court finds that Densys has not plausibly pled Medit's pre-suit knowledge of infringement of the '707 or '257 Patents for purposes of its pre-suit induced infringement and contributory infringement claims.

The Court next turns to whether the filing of the original complaint in Densys's action against Medit could serve as the source of post-suit knowledge by Medit for purposes of indirect

infringement. Medit moves to dismiss Densys's post-suit contributory infringement claims for both the '257 Patent and the '707 Patent, and moves to dismiss Densys's post-suit induced infringement claim only for the '707 Patent. The Court limits its analysis accordingly.

The Court acknowledges that, similar to willful infringement, courts are deeply divided regarding the issue of whether the complaint can serve as the basis of actionable knowledge to sustain indirect infringement claims. *Compare ZapFraud, Inc. v. Barracuda Networks, Inc.*, 528 F. Supp. 3d 247, 250 (D. Del. 2021) (taking the position that "the complaint itself cannot be the source of the knowledge required to sustain claims of induced infringement"); *Mallinckrodt, Inc. v. E-Z-Em Inc.*, 670 F. Supp. 2d 349, 354 n.1 (D. Del. 2009) ("The Court is not persuaded by Plaintiffs' contention that the requisite knowledge can be established by the filing of the [complaint]"); *Dynamic Data Techs., LLC v. Brightcove Inc.*, No. 19-1190, 2020 WL 4192613, at *3 (D. Del. July 21, 2020) (same), *with Staton Techiya, LLC v. Harman Int'l Indus., Inc.*, 734 F. Supp. 3d 354, 365 (D. Del. 2024) (taking the position that "pre-filing knowledge is not required to state a claim for inducement"); *LiTL LLC v. Lenovo (United States), Inc.*, No. 20-689, 2022 WL 610739, at *7 (D. Del. Jan. 21, 2022) (taking the position that "when induced infringement is alleged, an amended complaint can operate to plead knowledge since the filing of the original complaint"). Some courts draw a distinction between willful and indirect infringement in this context. *See, e.g., Wrinkl*, 2021 WL 4477022, at *7 (distinguishing between willful and indirect infringement regarding amending a complaint to allege post-suit knowledge).

Regarding indirect infringement, this Court stays consistent with its position regarding willful infringement, that the complaint cannot serve as the basis of actionable knowledge. "The purpose of a complaint is not to create a claim but rather to obtain relief for an existing claim." *VLSI Tech. LLC v. Intel Corp.*, No. 18-966, 2019 WL 1349468, at *2 (D. Del. Mar. 26, 2019). "For

36

that reason, the complaint itself cannot be the source of the knowledge required to sustain claims of induced . . . infringement." *Helios Streaming, LLC v. Vudu, Inc.*, No. 19-1792, 2020 WL 3167641, at *2 (D. Del. June 15, 2020). As a matter of judicial economy, parties should be encouraged to provide a pre-suit notice letter when they suspect infringement. *See ZapFraud*, 528 F. Supp. 3d at 250 ("It seems to me neither wise nor consistent with principles of judicial economy to allow court dockets to serve as notice boards for future legal claims for indirect infringement and enhanced damages."); *Callwave*, 2014 WL 5363741, at *1 ("The pre-suit letter does, however, offer a benefit—the patent holder and the asserted infringer may exchange information, and the asserted infringer might then take a license, or the patent holder might learn of reasons why suit should not be filed."). This incentive exists whether indirect or willful infringement is alleged. Thus, for the same reasons as for willful infringement, for the purposes of indirect infringement, the Court finds that post-suit knowledge of infringement cannot be based on the filing of a complaint.

For all the above reasons, the Court finds that Densys has not plausibly pled Medit's knowledge of infringement of (1) the '707 Patent for purposes of sustaining an induced infringement claim or a contributory infringement claim, or (2) the '257 Patent for purposes of sustaining a pre-suit induced infringement claim or a pre- or post-suit contributory infringement claim. Thus, the Court dismisses Densys's claims for willful, contributory, and induced infringement of the '707 Patent against Medit without prejudice, and dismisses Densys's claims for willful, contributory infringement, and pre-suit induced infringement of the '257 Patent against Medit without prejudice.

## IV.    CONCLUSION

For all the foregoing reasons, Defendant Align Technology Inc.'s Motion to Dismiss Plaintiff Densys Ltd.'s Complaint (C.A. No. 25-768, D.I. 10) is **DENIED** with respect to the

patent-eligibility of the '707 and '257 Patents and **GRANTED** with respect to direct infringement of the '257 Patent, and willful and indirect infringement of the '707 and '257 Patents.  Defendant Medit Corp.'s Motion to Dismiss Plaintiff Densys Ltd.'s First Amended Complaint (C.A. No. 25-769, D.I. 21) is **GRANTED** with respect to willful, contributory, and induced infringement of the '707 Patent, and willful, contributory, and pre-suit induced infringement of the '257 Patent.

The Court will issue an Order consistent with Memorandum Opinion.

.

38